Chief Justice Bibb
delivered the Opinion of the Court.
Hendley sued William Winn, as administrator of Letitia Winn, deceased, and had judgment by default, isssued execution, and the sheriff returned “no property found in the hands of the administrator.” '
Thereupon, Hendley sued Winn and his sureties pn the bond given in the county court, upon obtaining his letters of administration; and assigned for breach of the condition that said William Winn “did nqt well and truly administer the said goods and chattels and credits according to law in this,” that the said Hendley had recovered the judgment aforesaid against the said administrator, had issued execution of fieri facias, upon which the deputy sheriff had returned that there were no goods nor chattels, in the hands of said William Winn, in his bailiwick, to he administered; that assets sufficient to satisfy said judgment had come to the hands of the administrator before the return pf said execution, to be administered; that the administrator had wasted the said assets, whereby the said Hendjey had lost his debt and was endamaged to the value of $200, whereby an action accrued to the commonwealth on said bond, to the use of said Hendley &c.
The administrator Winn, was returned no inhabitant of the county, and the plaintiff abated the suit as to him.
The sureties of the administrator craved oyer of the bond and condition, and demurred. The court overruled the demurrer.
The sureties pleaded, also, that the administrator had not wasted the assets. 2dly. That the administrator had fully administered the assets; upon these pleas jssuqs were joined to lire country, which were. *100 found for the plaintiff, and thereupon the plaintiff had judgment. To which, the sureties prosecute this writ of error.
Question staled.'
Statutes for the benefit of executors,and protecting them against personal responsibility for judgments.
The question presented by the demurrer, and argued at the bar, is, can this action on the bond be maintained at law against the sureties, after a judgment by default against the administrator and return of nulla bona, before a devastavit fixed upon the administrator by some appropriate proceeding against him for that purpose?
By the statute, no security for any executor or administrator is chargeable beyond the assets of the testator or intestate, by reason of any omission or mistake in pleading, or false pleading of such executor or administrator.
By the statute of 1811,(1 Digest 534,)it is declared, that no executor or administrator shall be made liable for more than the amount of assets, which have or may come into his hands to be administered; or on account of having failed to plead or make defence, or on account of any pleas to any .suit or action whatever to be brought or prosecuted against him or her; but the judgment of the court in all such cases, shall only render such executor or administrator liable for the amount of assets in his or her hands unadministered: and in all suits against executors or administrators for de vastavits, or on their bonds or otherwise, he, she op they, shall be at liberty to plead plena adminisiravit; and under such plea, to shew the real amount of assets which were in his or her hands unadministered, when the origina} judgment was rendered against him, her or them; for which sum, and for no more, judgment may be rendered. And it is declared that if an executor or administrator suffers judgment by default, or fails or neglects to shew the real amount of assets unadministered, by which judgment shall pass for more than the amount of such assets, and afterwards, when sued for a devastavit, shall show that he has not assets sufficient to pay the plaintiff’s demand, the court may adjudge the costs of such second suit, to be paid by such executor or administrator out of bis, her or their own proper goods and chattels.
Executor!-’ and administrators’ bonds
Points in the condition of such bonds. .
Grounds of the action against the adr ministrator’s sureties stated.
By the statute regulating lire granting of pro-.nates and letters of administration, the forms of the bonds to he given with security are prescribed, and it is declared that such bonds, which are ail to lie made payable to the Commonwealth, “may he put in suit and prosecuted, from time to time, by, and at the costs of any party injured by a breach thereof, until the whole penalty be recovered thereupon.”
That a suit will lie upon the bond against the sureties, at the instance of a creditor injured by a breach of the condition, is clear. But the question yet is, what the creditor mud do to lay a foundation for a just cause of action against the sureties.
The condition of the bond embraces these points of duty to be performed by the executor or administrator: — 1st. That, he shall make a true and perfect inventory, and exhibit it at such time as thereunto he shall be required by the county court who granted the letters of probate or of administration. Wily. To administer the goods and chattels, and credits, well and truly, according to law. Sdly. To make a just and true account of all his actings and doings therein, when thereunto required by the said county court. 4th. To deliver and pay legacies in the will — in cases of executors; and in cases of ad» ministrators, to pay the surplus to the persons entitled thereto by law, and to render up the letters of administration in case a will shall appear.
In this case the creditor has selected the second point, and alleged as his cause of action against the sureties, that the condition is broken by the administrator William Winn, by Iiis failure, well and truly to administer the goods and chattels, and credits, and in wasting the assets. To ground his cause of action against the sureties, he alleges a suit against the administrator in his fiduciary character, a judgment by default, and execution against the assets of the decedent returned nulla bona. Upon this he bases his action against the sureties. He shows no action for devastavit, or against the administrator, nor other proceeding whereby a devastavit to anyainouut, has been fixed upon the administrator; huí from the judgment by default against the administra- • or in his fiduciary character, to establish, the debt *102 against the intestate, the creditor by his declaration infers, a faithless administration, and that a devasta-; vit has been committed, that the sureties have thereby become responsible to him, and by this suit he proposes to try, against the sureties alone, the question, to what amount the administrator has wasted the assets.
Questions stated.
Rule for what ^iiust be contained in the declaration, or other gvoutids of proceeding by the plaintiff or other actor.
Does the declaration lay a good cause of action against the sureties? Does it follow from what the plaintiff sets forth in his declaration, that the sureties ought to have paid him his debt, and that by failing to pay the debt, they have neglected their duty and obligation and have subjected themselves to suit?
It seems to be a general and universal rule, that in every accusation, suit or prosecution, in a court of justice, the actor, relator or plaintiff, must charge the reus, accused, or defendant, with having done an act in violation of his duty, or with an omission to do an act which he was bound to do. Does it follow from the facts charged in the declaration, compared with the duties and responsibilities of executors, ad? ministrators and their sureties, as regulated by our statutes, that the sureties of Winn the administrator, were bound by the condition of their bond to have paid to the creditor who has put the bond in suit, his debt, or any part of it? From what the creditor had done ■ against the goods and chattels, and credits, of the decedent or against the administrator, before he sued his sureties, does it follow that they had omitted a duty which was incumbent on them? Were they bound before they were sued to have paid thir debt, in whole or in part, in order to save themselves from a just responsibility by suit on their bond? To answer these queries, the statute which gives to the creditor his recourse against the •sureties in the bond, does not furnish any clear and decisive rule as to the length to which the creditor must go against the administrator in his fiduciary character, and against him in his personal character and responsibility, before he may resort to the bond given to the Commonwealth by the administrator. We must therefore resort t.o construction, and reason from analogy.
Principles and policy.of the law, requiring sureties of exi eentors and administrators.
It interests the whole community and the well being of civil society, that this rule be so settled, as to retain to creditors, a just security against the waste of that fund, upon which they have claim for the payment of the debts bf the decedent; and at the same time not to make the rule as to the responsibility of the sureties so rigid, as to deter society from enabling those who aré appointed by will, of designated by law; as executors or administrators; from obtaining the necessary sureties to enable them to sue out letters of probate or of administration. Generations are rapidly passing away, and new generations succeeding on the stage of human life; every year death cuts off numbers, who are the Owners of property, upon which there aré claims; by creditors ex debito justitice, and by connexions and relatives; by the civil institutions and bonds of society. To permit the owner to commit the management of his property after his death, to the person deemed by him trust worthy, or in case of intestacy, to commit the management of this fund,' td the relatives or others most interested, the statutes have intended to provide. The statutes likewise provide, that those to whom the goods and chattels and credits, of deceased persons shall be committed, shall find sureties for the due execution of the trust. It is important then in the construction of the statute, which requires this • security and creates the responsibility of the sureties, that the rule of that responsibility he not such as to deter men from becoming hound for executors and administrators, in whose good faith and conduct in the management and application of the fund, they have sufficient Confidence. If the rule were so that every surety for an executor or administrator, by virtue of his bond, became liable to he sued by every creditor, before any default or misapplication by the executor or,, administrator, but barely because there were debts on the one hand and assets on the other, and so the sureties be put to defend every suit, which any and every creditor might bring to establish big debt, and in each case, to show the amount of assets, few responsible men would be found willing, to enter themselves sureties for an executor and ad *104 ministrator On such terms; few would be willingly expose themselves at once and directly to the suit of every creditor, before any failure or misapplication! of the funds of the deceased. The statute which requires the securities to be given, and prescribes the duties and responsibilities of the executors, administrators, and their sureties, clearly does not mean to subject the executor or administrator per-1 sonaliy, nor the surety, until after a faithless man1 agemeut of the trust, and a waste of the assets.
Creditor cannot at once sue siii’otios ¿('executors, ou his oriitinal grounds 'ol' action againsl decedent.
Platillo ambiguous 115 to iioiv far a creditor must go ¡ijíninsl executor himself, before he can sue surety-
Care of Virginia cited-.
Therefore, there is little difficulty in saying, that if si creditor sues the administrator and the sureties in the administration bond in the first instance, and shews the bond of the intestate, and alleges assets sufficient, he ought not to maintain his action; be? causa he has come too soon to demand the personal responsibility of the administrator or the surety.
Riit suppose the creditor, connected with the proferí of the demand against the intestate, alleges assets, and a waste of those assets, and proposes to try all the questions in an original suit against the administrator and his sureties, shall he permitted to do this? if not, why will not such a form of declaring be maintained, and how far must the creditor have proceeded, before his cahse of action against the sureties has accrued and become complete, so as to charge them by action on their bond? This last question in its two members, is not so clearly treated of in the statute which prescribes the form of the bend, and gives the action thereon to the party aggrieved by breach of the condition, as that he who reads may understand at once and answer. Candor will concede, and extort from every impartial inquirer, however willing he may be to favour the just claims of the creditors, that the statute has left this subject in difficulty and doubt. In this, as in all other cases of doubt, as to the meaning of a statute, the courts must apply their best judgments, and by reason and construction, endeavor t'o Solve the doubt and fix the responsibility.
This subject came before the court of appeals of Virginia, at their Spring term, 1791; in the case of
Creditors may have their action on the executors bond against the sureties.
In Virginia there must bo a conviction of the executors of a devastavit in a direct action, before the su=reties can be sued.
Braxton, executor of Glaiborn, against Winslow and others. (1. Wash. 31.) In that case Waller, the creditor sued on the bond in the first instance; by the pleadings, the creditor alleged his debt against the testator, notice thereof to the executor, that he had paid debts of inferior dignity, had not paid his demand, and that he had wasted the assets; issue was joined upon the waste of assets. The jm;y found the debt, and that the executor had wasted the assets, the epurt entered judgment for the plain? .tiff. In that case, the counsel made it a question, whether actions could be maintained at all, upon such bonds for the benefit of creditors; but upon. ihut, the court liad no difficulty, becau-e of the words of the statute, which authorized the bond to ho put in suit, for the benefit of a party injured. After deciding that question, .Bulge Pendleton proceeds thus in delivering the opinion of the court:
“The true question then is, lias the relator, Waller, brought himself within the act? or in other words, does it appear from the record, that lie is a party injured, within the words and meaning of the act? A man who claims as a creditor, and means to take the benefit of this act, must shew himself a creditor; that the testator had assets; that they came to the hands of the executor; that there was a sufficiency to discharge his demand, or so much thereof, after paying debts of a higher dignity; and that the executor has wasted the assets; without this concurrence, there is no injury done to him.”
lie then reasons, to shew that paying debts of' inferior dignity first, where there is ho deficiency of assets, could not, justly, subject the security, for if all are paid, the order of payments is of no consequence; also to shew that a suit against the executor to establish the debt was necessary; that in such a dispute, the securities in the bond are strangers to the contract, and by no means competent to manage it. Judge Pendleton then proceeds: “Mr. Waller therefore, ought to have shewn by an action brought against the executor, that he was a creditor; he ought to have shewn by his action against Moore !lie executor, that he had committed a devastavit; *106 a suggestion of a devastavit, may be likened to a criminal prosecution, and an executor shall not be. presumed guilty of a devastavit, till it is found against him by a verdict. It may be objected, that the act does not prescribe that a creditor shall not go against the securities in the first instance; and therefore this action was well brought; to which this answer presents itself, that it is an established principle- of construction, that where a statute has given a new remedy, without pointing out the mode in which this remedy is to be attained, the rules of the common law, and the practice of the courts, founded upon the reason of the thing, shall be pursued. Therefore, we are all of opinion that the judgment of the general court must be reversed,”
In the case of Call vs. Ruffin, (1. Call 394,) the principles of the case just quoted, were referred to, and recognized in 1798, by judges Pendleton, Carrington and Lyons. In this latter case, judge Lyons, in approving of the case of Claibourn’s executor vs. Winslow &c. to the use of Waller, says: “An executor or administrator cannot be charged de bonis propriis, until a suit has been brought against him in order to establish the demand, and ascertain the disposition of the assets; and as the bond is only intended as an ultimate security against a devastavit, the devastavit ought to be established, before any action can accrue upon it.” And judge Carrington declares, “that before a suit can be maintained upon an administration bond, a devastavit must be first established by suit against the executor or administrator.”
In the case of Gordon’s administrators against the justices of Frederick, at' the instance of Cartmill, March, 1818; (1 Munf. 7,) the question was again discussed, and judge Tucker in a very full and able examination of the question, decided it necessary,after a judgment against an executor or administrar, tor as such, to establish a devastavit against him personally, by an appropriate proceeding, before a suit can be maintained against him and his sureties on the bond. The former case of Braxton, executor, vs. Winslow &c. was referred to, quoted, and the *107 reasons and principles .approved. Judge Fleming concurred and the judgment of the court was entered accordingly.
Case in Virginia on the act prescribing the condition of the executors bond, re-enacted here.
The case of Braxton vs. Winslow, is entitled to the highest respect, in the decision of the question now before us. That case was decided in 1791; before the separation of Kentucky from Virginia, and upon the very words of the bond, and upon the very same words as to the action of the creditor, as in the statute now in force in Kentucky. In truth, that statute was operating and in full force in the District of Kentucky, our constitution adopted it, and we have done no more than in a compilation and revisal, to re-enact that which was before in force.
Such was the construction given to this statute, the first time it came before the court of appeals of Virginia, whilst Kentucky was a part of Virginia; the statute never has ceased to operate in Kentucky, the words of the statute then construed by that court, are the words of the statute now in force; that construction was the rule for Kentucky, as for every other part of Virginia. The separation of Kentucky from Virginia, and the adoption of the very words, and very same statute, cannot have ■changed the meaning of the words. That construction has never been changed nor contradicted by the court of appeals of Virginia, or of this State. Not a dissent has been expressed by any judge of the court of appeals, who succeeded in office since 1791, but as often as the case has been mentioned, its reasons and principles have been approbated and confirmed. The question now presented was fully considered by judge Pendleton, and his opinion concurred in by the court. A sounder or safer judge than Pendleton, never sat upon the bench. It was fortunate that the doubtful meaning of that statute, was first considered and commented on by him, in the appellate court. For thirty-six years that opinion has stood, not only not contradicted, but approved and confirmed, the statute being all the time, in full operation in Virginia, as well as in Kentucky. The error of the opinion should be *108 clearly perceived, and mischiefs resulting from ilia', error should be sensibly felt, to justify a departure now, from a construction given at such a time, and so confirmed and acknowledged. No mischiefs have been felt as the residí of that construction to induce either tlie Legislature of Virginia, or of-Kentucky, to interfere and declare a different rule. Reasons to confute the opinions of judges Pendleton, Flemming, Lyons, Carrington and Tucker, are not presented. In such a case, it would seem to be as safe to follow their opinions delivered from the bench, as in like cases, to follow the opinions of Littleton, Coke and Rlackstone,- delivered in their commentaries.
Creditor of iho decodont most first obtain his judgment Tor bis demand againslthe executor or administrator, to bo made of the assets, tlicn on nulla bona returned, bring a second suit to convict him of a devastavit, before the sureties can be sued on their frond.
The statute clearly docs not intend, that the ex-editor or administrator, in ills own person, or by his sureties in the bond, shall underwrite and assure all the debts of the deceased. The goods and chattels, rights and credits of the deceased, which aré to be administered, are intended to be secured by the statute against devastaviis. .By our statute the common law is changed; after a return of nulla bona, the administrator himself is allowed to plead plene administrarii; such a return neither obliges the executor or administrator to pay the debt, nor tiré sureties; a plea by tlie sureties, that tlie creditor bad sued the executor or administrator for a devastavit, and that in that suit, it was found against the creditor, would be a good plea to a suit on the bond. Under our statutes, the reason is stronger for not allowing a suit on the bond against the sureties, until the executor or administrator lias been sued for a devastavit.
The rule of responsibility upon the bond, ás settled by the decisions quoted, docs secure the assets to the satisfaction of the creditors. Although slow, it is sure, and retains the ultimate security of the assets against waste; it takes from creditors no part of their security, which existed before this statute. It preserves the rights of the claimants of the assets from ultimate loss by devastavits; and is not so rigid as to d'eter men from becoming sccuHtibs for executors or administrators, whe, are men *109 'of character and worthy of confidence. This construction of the statute was given in 1791, by the iiighest judicial tribunal of the country, the legislature in 1797, revised and re-énacted the statute the same words; the inference is fair, that the legislature adopted the meaning and exposition of the statute as formerly given by the judiciary. Under these considerations, we think the safe path of duty is to follow the construction of a statute, of doubtful meaning, given at such a time, by such high authority, and so approved and confirmed.
From this opinion, judge Mills dissents.
It is considered by the court, that the judgment of the circuit court be reversed, and the cause remanded, with directions to that court, to enter judgment on the demurrer for the defendant.
Plaintiffs in error, to recover their costs in this Court.